Felipe De Jesus DE LUNA–
GUERRERO, et al.,
Plaintiffs,

v.

THE NORTH CAROLINA GROWER'S
ASSOCIATION, INC., and Marcus
Thigpen, et al., Defendants.

No. 4:02–CV–173–H(4).

United States District Court,
E.D. North Carolina,
Eastern Division.

Sept. 30, 2004.

Robert J. Willis, Law Offices of Robert J. Willis, Carol L. Brooke, Jack Holtzman, Raleigh, NC, for Plaintiffs.

W.R. Loftis, Jr., Constangy, Brooks, & Smith, LLC, Winston–Salem, NC, for Defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the following motions:

1. Motion for Bilateral Certification of North Carolina Wage and Hour Act and Contract Claims for Non–Payment of Wages When Due [Docket Entry ("DE") # 2];

2. Motion for Conditional Certification of Collective Action and to Send Court-approved Notice to Putative Members of Collection Action pursuant to 29 U.S.C. § 216(b) [DE # 4];

3. Motion to Send Court–Approved Notice to Putative Members of Defendant Class pursuant to Rule 23(d)(2) [DE # 5];

4. Defendants' Motion for Summary Judgment [DE # 17];

5. Amended Motion to send Court–Approved Notice to Putative Members of Collective Action pursuant to 29 U.S.C. § 216(b) [DE # 45];

6. Plaintiff's Summary Judgment Motion [DE # 55]; and,

7. Motion to Strike affidavits of Stan Eury and James Holt served on 15 January 2004 and to exclude any trial testimony from James Holt [DE # 65].

The court has received responses and replies to the motions for summary judgment. These matters are ripe for adjudication.

The original complaint was filed on December 23, 2002 and has been amended twice since that time. Plaintiff's second amended complaint sets forth three causes of action: (1) a class claim pursuant to the North Carolina Wage and Hour Act (NCWHA), alleging a violation of the NCWHA because of defendants' failure to reimburse their workers for transportation, H2A visa, border crossing fees and related costs incurred in traveling from their home towns in Mexico to North Carolina, and resulting in defendants' failure to pay all wages when due during their first workweek; (2) a class claim under the common law of contracts, alleging a breach of contract as a result of the defendants' failure to pay their workers for transportation, H2A visa, border crossing fees and related costs incurred in traveling from their home towns in Mexico to North Carolina; and, (3) a Fair Labor Standard Act (FLSA) claim for the named plaintiffs with a proposed opt-in plaintiff class under 29 U.S.C. § 216(b), alleging a minimum wage provision violation because of defendants' failure to reimburse plaintiffs for visa fees, border crossing fees, and transportation expenses in the first workweek, which effectively brought the plaintiffs' first week's wages below the federal minimum wage.

## STATEMENT OF THE FACTS

In 2000, 2001 and 2002, defendant NCGA sought permission to bring Mexican agricultural laborers to work on their farms by filing temporary labor certification applications with the United States Department of Labor ("DOL"). Those ap-

plications, called "Clearance Orders," set forth the number of workers needed by the defendants, the period of employment, and the terms and conditions of work being offered by the defendants. The DOL approved the terms of work described in the defendants' clearance orders, and granted their request for H2A visas to allow Mexican workers to fill the jobs described in those orders. Once approved, the clearance orders became the contract under which workers were employed. 20 C.F.R. § 655.102(b)(14).

The terms of H2A visas are controlled by statute, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188, as well as DOL regulations applicable to the temporary labor certification process. 20 C.F.R. § 655.100 *et seq.* Workers admitted on H2A visas may only fill the jobs described in the sponsoring employer's approved Clearance Order. Upon completion of the work period described in the Clearance Order, or the worker's termination, whichever occurs first, the worker is required to return to his home country. 8 C.F.R. § 214.2(h)(5)(ix).

Each of the plaintiffs paid their own visa, transportation and subsistence fees. Plaintiffs detail the expenses as follows: (1) $145 visa application and issuance fees, and 100 pesos (approximately $10) for local transportation to arrange for the visas as well as a $6 fee for the issuance of an I-94 immigration document paid to the Immigration and Naturalization Service at the U.S./Mexico border ("visa expenses"); (3) $31–$45 for bus fare from plaintiffs' home villages to the U.S./Mexico border and $85–$100 for bus fare from the U.S./Mexico border to North Carolina ("transportation expenses"); and, (4) $27–$45 for subsistence expenses for travel from plaintiffs' home villages to North Carolina ("subsistence expenses").

Defendants never reimbursed plaintiffs and putative members of the plaintiff classes for the $161 in visa and I-94 document expenses they incurred. The defendants reimbursed inbound transportation and subsistence expenses from the plaintiffs' home villages to North Carolina only after the contract period was half over, to those workers who were still employed. Defendants did not reimburse the plaintiffs and other putative class members for inbound transportation expenses when their employment ended prior to them completing one-half of the contract period.

Plaintiffs claim that they failed to earn the federal minimum wage of $5.15 per hour during their first workweek, and in fact, had negative earnings for that first week in 2000, 2001 and 2002.

### SUPPLEMENTAL JURISDICTION

This court has jurisdiction over the FLSA claims under 28 U.S.C. § 1331, as the claim raises a federal question. This court may exercise jurisdiction over the state law claims under 28 U.S.C. § 1367(a), supplemental jurisdiction, since the state law claims form part of the same case or controversy. Congress also has made clear that this supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). This supplemental jurisdiction, though allowed under 28 U.S.C. § 1367(a), is discretionary under 28 U.S.C. § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

■ The court believes there are exceptional circumstances here which provide a compelling reason to decline to exercise jurisdiction over the state law claims. Named plaintiffs wish to bring a bilateral class action under Federal Rule of Civil Procedure 23 consisting of an "opt-out" plaintiff class involving nine to fourteen thousand H2A workers as well as a defendant class consisting of approximately one thousand workers. These classes would be in addition to the proposed representative "opt-in" collective action under 29 U.S.C. § 216(b) with nine to fourteen thousand potential plaintiffs.

However, the size of the class is not this court's main concern. The court believes that the existence of the three different classes proposed here, of varied types and sizes, will cause too much confusion in this particular case. This case necessitates that notification be sent to thousands of foreign nationals who have worked for the defendant NCGA under the H2A program. These potential plaintiffs, many of whom do not speak English and are unfamiliar with the legal system of this country, will be even more confused by multiple notifications regarding two separate classes and separate claims. This problem is confounded by the fact that the collective action under the FLSA is an "opt-in" class, while the proposed class action under Rule 23 is an "opt-out" class. In addition, the state law claims seek to certify a class of defendants as well. This certification will require another set of notices to be sent to a different class of persons. While none of these concerns standing alone may merit "exceptional circumstances" to decline to exercise jurisdiction, all of these concerns combined lead this court to believe that the court should decline to exercise its jurisdiction over the state law claims. Class actions are intended to promote judicial efficiency where large groups of people are involved. Here, however, judicial efficiency will be better promoted by dismissal of the state law claims for lack of jurisdiction. Then this court can properly and efficiently administer the collective action proposed by the named plaintiffs pursuant to 28 U.S.C. § 216(b). Plaintiffs are free to pursue their state law claims, including potential class claims, in the state courts. Therefore, plaintiffs' claims under the NCWHA and the common law of contracts are hereby DISMISSED for lack of jurisdiction.

Inasmuch as this court has declined to exercise jurisdiction over the plaintiff's state law claims, the following motions are deemed moot: Motion for Bilateral Certification of North Carolina Wage Hour Act and Contract Claims for Non–Payment of Wages When Due and Motion to Send Court–Approved Notice to Putative Members of Defendant Class pursuant to Rule 23(d)(2).

### CERTIFICATION OF 216(B) COLLECTIVE ACTION

■ The named plaintiffs move the court for conditional certification of the collective action and to send court-approved notice to putative members of the collective action pursuant to 29 U.S.C. § 216(b). The named plaintiffs seek to include all of the following persons in the collective action:

Each similarly situated employee of defendants NCGA and/or Marcus Thigpen who was jointly or severally employed by NCGA and/or Marcus Thigpen to perform any agricultural labor in the

first workweek that any such employee arrived in North Carolina to perform any work pursuant to a labor certification and visa issued to the NCGA and/or Marcus Thigpen for any pay period that ended at any time falling in the three (3) year time period immediately preceding the date this action was filed and the date any such employee filed a timely consent to sue under 29 U.S.C. § 216(b) at any time before final judgment in this action is entered by this court.

■ The FLSA expressly allows employees to maintain a class action[1] for overtime pay on their own behalf and on behalf of all others similarly situated. 29 U.S.C. § 216(b). The FLSA further provides that any employee who desires to be a plaintiff in an action "must give[ ] his consent in writing to become such a party..." *Id.* Thus, the FLSA class certification provision has two requirements: (1) that the plaintiffs in the class be "similarly situated," and (2) that the plaintiffs included in the class "opt in" by filing with the court their consent to the suit. *Id.; Felix de Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 662 (E.D.Pa.2001) ("The only two requirements for maintaining a representative action under the FLSA are that class members be similarly situated and that each member file a consent to joining the action."). This "opt in" procedure is dissimilar to a standard class action under the Federal Rules, where all potential plaintiffs are bound by the judgment unless they "opt out."

The most contentious issue surrounding class certification under the FLSA concerns the requirement that the plaintiffs in the class be similarly situated. *See, e.g., Felix de Asencio,* 130 F.Supp.2d. at 662 (examining whether workers in a poultry processing plant who complained of wage rates were similarly situated). There is considerable federal precedent discussing the relationship plaintiffs in a class must have in order to be similarly situated, *see e.g., id.* at 662–63; *Mooney v. Aramco Servs. Co.,* 54 F.3d at 1213–14 (5th Cir. 1995); *Reeves v. Alliant Techsystems, Inc.,* 77 F.Supp.2d. 242, 246–47 (D.R.I.1999) but the Fourth Circuit has yet to address the question in the context of the FLSA.

> "Similarly situated" in this context means similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined. In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination.

Kearns, *The Fair Labor Standards Act,* § 18.IV.D.3

Here, the court finds that the plaintiffs have shown that they are similarly situated under 18 U.S.C. § 216(b). The proposed class of opt-in plaintiffs all worked for defendant NCGA and all complain of defendants' reimbursement policy, which they allege resulted in a minimum wage

---

1. Because many courts utilize familiar Rule 23 language when analyzing claims for class certification under the FLSA, the court will use the terms "class action" and "class certification." The FLSA uses the analogous term "representative action," but courts discussing group actions under the FLSA often use "class" language. For sake of uniformity, this court will also use the terms "class action" and "class certification." *See Mooney,* 54 F.3d at 1212 ("[I]n discussing the representative action, most courts utilize class action terminology from Rule 23 cases.").

violation under the FLSA. In this sense, the action falls within the theoretical framework governing class actions because a group of common employees is complaining of a general policy, presumably applied by all the member-farmers of defendant NCGA. Plaintiffs bolster their argument with declarations from the named plaintiffs regarding this policy. In addition, the purported plaintiff class seeks substantially the same form of relief. Therefore, plaintiffs' request for certification of a statutory representative action under 18 U.S.C. § 216(b) is granted. In addition, the court orders:

1. All parties shall have ten (10) days from the date of the filing of this order to file suggested changes to this court's proposed notice, attached hereto as exhibit "A."

2. After the final notice is approved by this court, a copy of the notice, and an accurate Spanish translation of the notice, shall be mailed to each possible plaintiff.

3. The parties shall inform the court within ten (10) days from the date of filing of this order of their agreement, if any, as to whether the defendants shall disclose the names and addresses of all potential plaintiffs to plaintiffs' counsel in order that plaintiffs' counsel may mail notices or the defendants shall provide the names and addresses to a designated 3rd party for mailing and defendant NCGA shall pay all costs associated with this method of notice. If the parties fail to agree, the court will decide this matter.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

### I. Standard of Review

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(e)). As this court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States,* 837 F.Supp. 123, 125 (E.D.N.C.1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. *Faircloth,* 837 F.Supp. at 125.

## II. FLSA CLAIM

■ Having declined to exercise supplemental jurisdiction, the only claim remaining before this court is the claim under the Fair Labor Standards Act (FLSA). Plaintiffs claim that defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206, by failing to reimburse the plaintiffs during their first week of work for the transportation, visa and border crossing costs paid directly by the plaintiffs.

The facts in this matter are not in dispute; therefore, this case is well suited for summary judgment. This claim is a matter of statutory interpretation and one of first impression in this circuit. However, the Eleventh Circuit has recently ruled on this issue, construing the statute in favor of the plaintiffs. *See Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228 (11th Cir.2002). Although rulings of the Eleventh Circuit are certainly not binding on this court, they are instructive and helpful in this court's analysis, especially on a matter of first impression in the circuit. The FLSA applies to workers admitted under the H–2A certification program. Therefore, the defendants were obligated to comply with the FLSA. "During the period for which temporary alien agricultural labor certification is granted, the employer shall comply with applicable federal, State, and local employment-related laws and regulations, including employment-related health and safety laws." 20 C.F.R. 665.103(b). Under the FLSA, an employer is required to pay each employee wages at or above the minimum wage rate each workweek. 29 U.S.C. § 206. Compliance with the FLSA is measured by the workweek, and these wages must be received "free and clear" of improper deductions. 29 C.F.R. § 531.35, 776.4.

Plaintiffs argue that failing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek. This concept is known as a *de facto* deduction. *See Arriaga*, 305 F.3d at 1236. This court agrees with the Eleventh Circuit in *Arriaga*, who stated: "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." The FLSA was implemented to protect workers and to "eliminate ... substandard labor conditions throughout the nations." *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 510, 70 S.Ct. 755, 94 L.Ed. 1017 (1950).

Therefore, having decided that the failure to reimburse plaintiffs for their expenses is considered a deduction under the FLSA, the issue becomes whether the deduction was improper under the FLSA. The employer may count as "wages" under the FLSA the reasonable cost "of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). "Other facilities" have been further defined by the regulations contained in 29 CFR § 531.32(a) to include "transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment." However, the regulations also note "that under § 531.3(d)(1), the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 CFR § 531.32(c) (Items held for benefit of employer defined as "transportation charges where such transportation is an incident of and necessary to the

employment (as in the case of mainte-nance-of-way employees of a railroad)").

Therefore, the ultimate issue before the court is whether the transportation and visa costs here were primarily for the benefit or convenience of the employer and therefore are an incident of and necessary to the employment. "The cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1). If the costs are determined to be primarily for the benefit of the employer, the defendants should have reimbursed plaintiffs during the first workweek up to the point that the workers received minimum wage in order to bring defendants into compliance with the FLSA.

The regulations list examples of costs that are considered primarily for the benefit or convenience of the employer, including tools of the trade, required uniforms, and costs imposed on the employer as a matter of law. 29 C.F.R. §§ 531.3(d)(2) and 531.32(c). "Other facilities" or items that are deemed not to primarily benefit the employer and therefore may be properly deducted are, for example: meals, housing, gas and electricity for housing. 29 C.F.R. § 531.32(a). The precise issue that must be addressed is into which category does the workers' transportation and visa costs fall.

In deciding this issue, the court will first address the letters before it in the record and caselaw cited by the parties.

The court has before it in the record letters from the United States Department of Labor (DOL). These letters consist of both formal opinion letters and letters from various DOL officials to various individuals and congressional representatives.

█ The "rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

The weight to be given a particular opinion letter in a particular case before the court will "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161.

### Opinion Letters

The defendants do not wish the court to consider two opinion letters issued by the DOL: WH–92 and WH–531. These opinion letters were before the court in *Arriaga,* but that court declined to consider them in light of the *Skidmore* analysis noted above.

The first opinion letter, WH–92, was written in 1970. The opinion letter notes that DOL has "consistently regarded the cost of transporting employees to and from the point of hire as a cost to be borne by the employer, and not the employees, as a cost incidental to the employer's recruitment program." DOL Opinion Letter of Wage–Hour Administrator WH–92, dated November 10, 1970. This opinion letter gives no specific facts regarding the situation before the Administrator at that time. Therefore, although the court notes that transportation costs to and from the point of hire have, at least in some situations, been considered a cost that should be borne by the employer, the opinion letter gives no direct guidance to the current issue before this court.

The next opinion letter, WH–531, provides, in pertinent part:

> Under the FLSA, it has always been the position of the Department of Labor that no deduction, that cuts into the minimum wage, may be made for transportation of workers from the point of hire and return to that point. This is so, because such transportation costs incurred in this connection are deemed to be primarily for the benefit of the employer (29 CFR Part 531.32(c)).

DOL Opinion Letter of Acting Wage–Hour Administrator WH–531, dated June 27, 1990.

This letter, as noted by the Eleventh Circuit in *Arriaga*, fails to give the reasoning behind this ruling. Therefore, under *Skidmore*, it is impossible to weigh the "validity of its reasoning" or the thoroughness of the consideration. However, it does offer to the matter before this court the fact that this statement represents the consistent position of the DOL, at least for some time period prior to 1990 when WH–531 was issued and for some situations. However, these two opinion letters provide little guidance to this court's decision in this current matter.

### Reich, Echaveste and Perry Letters

■ Defendants would have this court rely on three letters from officials in the DOL.[2] These letters state the enforcement policy of the DOL as it relates to the specific matter before the court. The first letter, dated May 11, 1994 was from then-Secretary of Labor Robert B. Reich to Rep. Martin Lancaster of North Carolina (the "Reich letter"). *See* Eury Aff. II, Exh. A. The second letter, dated June 30, 1994, was from then-Wage and Hour Administrator Maria Echaveste to Stan Eury,

president of defendant NCGA. *Id.*, Exh. B. Finally, the third letter was from Regional Administrator Alfred H. Perry to Rep. Lindsey Graham of South Carolina, dated February 18, 2000. *Id.*, Exh. C.

Defendants rely on the three letters for the fact that the DOL had taken a non-enforcement policy in regards to this issue. "Accordingly, pending resolution of the policy and procedural issues relating to the treatment of transportation expenses, we are not prepared to assert violations in this area under the FLSA." Reich letter, page 2 and Echaveste letter, page 1. The Perry letter also noted that the agency is not prepared to assert violations under the FLSA. Perry Letter, page 3.

Defendants argue that as an equitable matter they should be allowed to rely on the Reich, Echaveste and Perry letters from the DOL. The defendants find them more reliable than the opinion letters discussed above. Without deciding the weight to be given these letters under *Skidmore*, or whether in equity defendant should be allowed to rely on these letters, this court finds that defendants' reliance on these letters is misplaced. First, these letters speak only of the DOL's enforcement policy regarding *de facto* deductions of transportation costs, not the status of the law or whether DOL considers it to be a violation of the FLSA. Whether DOL chooses to use its limited resources to enforce a certain provision of the FLSA is a different question than whether a certain deduction constitutes a violation of the FLSA. Moreover, defendants rely on one sentence of these letters and would ignore, and have this court ignore, the rest of the body of the letter.

---

**2.** These letters were not considered by the court in *Arriaga* because they were not part of the record before the district court when it ruled on summary judgment. *See Arriaga* at 1238 n. 12.

A review of the letters in total reveals that the issue has been under review by the DOL. The Perry letter even warns that while the agency is not prepared to assert violations, even under the FLSA regarding transportation costs if the employer is not involved in any way in the transportation and no payroll deductions are made, "a worker might still file a private action against an employer to recover such costs." Mr. Perry continues "the right of a worker to pursue such a private action was not negated by our agency's decision to take a non-enforcement position on this issue." The letter also warns that courts in the past have ruled that these costs primarily benefit the employer.

Defendants argue that they should be able to rely on these letters, and that this court should take the same position as the DOL. However, as noted above, DOL has not decided whether these *de facto* deductions are violations, only that, at the time of the letters, they have decided not to assert violations. Defendants state that "for the court to make a finding that contradicts these letters would create disrespect for government and for regulatory agencies and would be grossly unfair to the individuals or entities who took the initiative in good faith to obtain written opinions from the DOL." Defendant's Memorandum in Support of Summary Judgment, p. 27–28.

The court finds this argument to be without merit. As stated above, DOL's policy regarding *de facto* deductions is anything but clear and a non-enforcement policy during review of an issue does not indicate the current status of the law. Finally, the defendants have been duly warned of an individual workers' right to file suit, specifically by the Perry letter on which the defendants seek to have this court rely. Defendants' argument would be well received by this court if this suit were being brought by the DOL; however, there is nothing inequitable about an individual worker filing suit against defendants.

### Caselaw

As stated earlier, there is no Supreme Court or Fourth circuit precedent to assist this court in making a decision. However, the parties have cited several opinions from various circuits, besides the *Arriaga* case, which this court has already discussed at length.

### *Torreblanca* and *Glassboro*

In *Torreblanca*, plaintiffs were migrant agricultural workers from Texas and Mexico who accepted work in a cannery in Indiana. The defendant company provided bus transportation from Texas to Indiana and later recouped the cost through deductions from the paychecks of plaintiffs. The Northern District of Indiana held that "for seasonal migrant workers, transportation is an incident of employment." *Torreblanca v. Naas Foods, Inc.*, 1980 WL 2100, at *5 (N.D.Ind. 1980). The court reasoned that this was the same position taken by DOL's Wage and Hour Division and "this position is reasonable." *Id.* Although this court does not disagree with the court's conclusion in *Torreblanca* and notes its consistency with DOL opinion letters of record, this court finds this case to be lacking in persuasive power. The court in *Torreblanca* fails to expand on its reasoning. Therefore, this case provides little insight into the matter before the court currently.

The *Glassboro* case opinions, cited by plaintiffs, are two opinions that arose from the same litigation. *Marshall v. Glassboro Service Ass'n*, 1979 WL 1989 (D.N.J. Oct. 19, 1979) ("*Glassboro I*") and *Brock v. Glassboro Serv. Ass'n*, 1987 WL 25334

(D.N.J. July 23, 1987) ("*Glassboro II*"). This case also held that transportation from point of hire (in this case Puerto Rico to New York) was not considered "other facilities" and therefore could not be considered part of the wages of an employee. The case relies on the opinion letter discussed earlier, WH–92, in reaching this conclusion. And once again, although this confirms a certain consistency of analysis by both the courts and the DOL, it gives this court no insight into the court's reasoning. Further, this court has already determined that it cannot rely on opinion letter WH–92 and therefore, it cannot rely on *Glassboro* as a basis for its opinion.

The court notes that although plaintiffs do mention both the *Glassboro* cases and *Torreblanca* in their motion for summary judgment, their arguments do not rely on the reasoning in these cases. These cases are mentioned only to show that the outcome in each case was consistent with the outcome in *Arriaga*. However, the *Arriaga* court did not rely on these cases in analyzing the issue or reaching its conclusion. For the reasons noted above, neither will this court.

### *Vega, Reich* and *Alvarez*

Defendants cite the Fifth Circuit opinion of *Vega v. Gasper* in support of their contention that the transportation in this case does not "primarily benefit the employer" within the meaning of the regulations. *See Vega v. Gasper*, 36 F.3d 417 (5th Cir.1994). In *Vega*, the Fifth Circuit held that time spent traveling to and from the job site on a daily basis was not compensable under the Portal-to Portal Act, 29 U.S.C. § 254. However, defendants' reliance is misplaced. First, in *Vega*, the workers were traveling by bus approximately 4 hours daily to and from work. Although this is certainly a burdensome and long trip to make each day, the Fifth circuit held it

was "just an extended home-to-work-and-back commute." *Vega*, 36 F.3d at 424–25. Here, however, workers seek reimbursement for one-time transportation from their homes in Mexico to North Carolina. A daily commute is different from a trip from another country of over 1000 miles to work for a season.

Second, the issue in *Vega* was whether the time spent traveling was compensable as work, not whether the employer was making improper deductions. Therefore, this court cannot rely on *Vega* as persuasive authority in this matter.

Defendants also cite *Reich v. Japan Enterprises Corp.*, 91 F.3d 154 (9th Cir.1996), in which the court found no obligation under the FLSA for employers to reimburse employees for recruitment costs paid to a third-party recruiter. Recruitment costs, however, are not at issue in the instant case, and this court finds this case irrelevant to the matters before it.

Finally, defendants cite *Dade County v. Alvarez*, 124 F.3d 1380, 1386 (11th Cir. 1997), *reh'g en banc denied*, 135 F.3d 147, *cert. denied*, 523 U.S. 1122, 118 S.Ct. 1804, 140 L.Ed.2d 943 (1998), which held that time spent in off-duty physical fitness training for police officers was not compensable work under the FLSA. However, this court finds no relevance in the citation of this particular case. This case decided whether fitness training was "compensable" work for which wages must be paid based on DOL regulations addressing that issue. The issue before the court in this matter regards alleged improper *de facto* deductions from wages, not whether a certain activity constitutes work as defined by the FLSA. The court will not consider this case.

### Analysis

#### 1. Transportation Costs

█ Having considered the caselaw and DOL evidence, this court turns back to the

statute and interpretative regulations which are controlling. To determine whether the transportation costs constitute "other facilities," the court, as noted above, must determine whether the transportation is "primarily for the benefit of the employer" and therefore "an incident of and necessary to the employment." See 29 C.F.R. § 531.32

In *Arriaga,* the court determined that the transportation costs incurred by the workers were "an incident of and necessary to the employment." The court noted that "incident" is defined as " 'dependent on, subordinate to, arising out of, or otherwise connected with' something else." *Arriaga,* 305 F.3d at 1242, *quoting* Black's Law Dictionary 765 (7th ed.1999) ("Used as a noun, ['incident'] denotes anything which inseparably belongs to, or is connected with, or inherent in, another thing, called the 'principal.' ") "Necessary" is defined as "of an inevitable nature: inescapable." *Arriaga,* 305 F.3d at 1242, *quoting Merriam–Webster's Collegiate Dictionary* 776 (10 ed.1995).

Defendants chose to participate in the H2A program. As stated in *Arriaga,* employment of non-immigrant alien workers requires one-time travel beyond that of a normal commute. Defendants knew when they applied for H2A permits and hired non-immigrant alien workers under the H2A program that there would be travel expenses involved and that defendants would ultimately be responsible for those expenses. (Referring to "50% rule": *See* 20 C.F.R. §§ 655.102(b)(5)(i) and 655.202(b)(5)(i)).

> Transportation charges are an inevitable and inescapable consequence of having foreign H–2A workers employed in the United States; these are costs which arise out of the employment of H–2A workers. When a grower seeks employees and hires from its locale, transporta-

tion costs that go beyond basic commuting are not necessarily going to arise from the employment relationship. Employers resort to the H–2A program because they are unable to employ local workers who would not require such transportation costs; transportation will be needed, and not of the daily commuting type, whenever employing H–2A workers.

*Arriaga,* 305 F.3d at 1242.

The regulations distinguish costs arising from employment (e.g., uniforms, tools, taxes on employer's buildings) from those costs that are part of everyday life (e.g., housing, food, commuter transportation). See 29 C.F.R. § 531.32. However, the one-time transportation costs at issue here do not arise in everyday life, but rather arise directly and inescapably from defendants' choice to employ workers under the H–2A program. Therefore, such transportation costs are "an incident of and necessary to the employment" and "primarily for the benefit of the employer" as defined by 29 C.F.R. § 531.32(a) and (c). They do not constitute "other facilities" as defined by 29 C.F.R. § 531.32(a), and therefore, cannot be subject to deduction, either actual or *de facto.*

Defendants attempt to argue that because the H–2A employees want to come to the United States to work (often because of better wages, working conditions, etc.) that these costs are not "primarily for the benefit of the employer." Defendants even state in their motion for summary judgment: "Obviously, the reason the Mexican laborers are willing to endure the bureaucracy, expense, separation from family and other hardships associated with getting to the United States-and to endure these hardships year after year-is that the system is, on balance, an extremely good deal for them." Defendants' motion for summary judgment, page 18.

However, the issue is not whether working in the United States is better than working in Mexico or whether "on balance" working in the United States is a "good deal" for the workers. The issue is whether failure to reimburse for transportation and visa costs during the first workweek constitutes a violation of the FLSA. This court's decision is guided by the regulations promulgated by the DOL, regulations which dictate that transportation which is an incident of and necessary to the employment cannot be the subject of deductions pursuant to 29 C.F.R. § 531.32.

Therefore, as to transportation costs, plaintiffs' Motion for Summary Judgment is GRANTED.

### 2. Visa Costs

■ Plaintiffs also ask the court to find that failure to reimburse visa and visa related expenses during the first workweek was a violation of the FLSA. The caselaw (except for *Arriaga*) and DOL letters has not specifically addressed visa costs. However, analyzing the visa costs using the same regulations that control transportation costs, the court finds that defendants' failure to reimburse visa expenses in the first workweek, to the extent the workers' pay is brought below the minimum wage, constitutes a violation of the FLSA.

These visas are integral to the H–2A program and required for employment. The terms of H2A visas are controlled by statute, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188, as well as DOL regulations applicable to the temporary labor certification process. 20 C.F.R. § 655.100 *et seq.* Workers admitted on H2A visas may only fill the jobs described in the sponsoring employer's approved clearance order. Upon completion of the work period described in the clearance order, or the worker's termination, whichever occurs

first, the worker is required to return to his home country. 8 C.F.R. § 214.2(h)(5)(ix).

This type of visa has no value outside of the employment and arises directly and necessarily out of H2A employment. This type of visa is not an ordinary living expense, because the visa restricts a worker to one employer for one season. Therefore, the court finds that the visa expenses are an "incident of and necessary to the employment" as defined in 29 C.F.R. § 531.32(a). Additionally, they do not constitute "other facilities" as defined by 29 C.F.R. § 531.32(a), and therefore, cannot be subject to deduction, either actual or *de facto.*

### 3. Subsistence Costs

■ Plaintiffs do not appear to directly address the issue regarding reimbursement of subsistence expenses related to the travel of the workers to North Carolina, and it is unclear whether they allege that failure to reimburse these expenses constitutes a violation of the FLSA. However, the stipulations filed by the parties do dictate approximate amounts spent on food, etc. during travel; therefore, this court will address these expenses in light of the FLSA.

The H–2A regulations require that subsistence expenses be reimbursed by at least the 50% point in the contract. *See* 20 C.F.R. §§ 655.102(b)(5)(i) and 655.202(b)(5)(i). However, under the FLSA regulations, subsistence expenses would qualify as "other facilities." 29 C.F.R. § 531.32(a). This type of expense is an "ordinary living expense" directly within the ambit of 29 C.F.R. § 531.32(a). ("'Other facilities,' as used in this section, must be something like board or lodging.") These expenses are properly deductible under the FLSA. Therefore, there is no violation of the FLSA for failure to reim-

burse subsistence expenses during the first workweek.

## H2A Regulations

 H2A regulations require that the employer must pay the worker for transportation and daily subsistence costs incurred by the worker from his home village to North Carolina when the worker completes 50% of the contract period, if not previously provided or reimbursed. *See* 20 C.F.R. §§ 655.102(b)(5)(i) and 655.202(b)(5)(i). Defendants argue that, therefore, they are not required to reimburse workers until 50% of the contract period is complete.

This court disagrees. First, by participating in the H2A program, the employer agrees to abide by and comply with all applicable federal, state, and local employment related laws and regulations. 20 C.F.R. § 655.103(b). These statutes include the FLSA. Specifically, in a letter from the DOL to Mr. Stan Eury, president of defendant NCGA, dated January 31, 2002, the DOL reviews the requirements of the H2A program. The letter notes that "Transportation and subsistence expenses to the worksite will be provided or paid by the employer upon completion of 50% of the work contract, **or earlier.**" Letter to Stan Eury dated January 31, 2002, *emphasis added.* Additionally, the letter contains the following paragraph regarding the FLSA:

> The Fair Labor Standards Act (FLSA) prohibits the employer from taking deductions from a worker's pay or otherwise driving the worker's wages below the FLSA minimum wage by imposing on the work an expense which is primarily for the benefit of the employer. Under the circumstances of the H–2A program, such employer-benefit expenses ("business expenses") include the cost of the travel to the worksite by both U.S. and H–2A employees hired at a distant location, including those employees hired through the State Workforce Agency (SWA). Therefore, the employee may not be required to bear the cost of the travel expenses to the extent that such expenses would infringe on the employee's receipt of the FLSA minimum wage. The employer's obligation to pay the full FLSA minimum wage for all pay periods is not overridden by the H–2A program's regulation at 20 CFR 655.102(b)(5)(i), under which the employer is required to reimburse the worker's inbound travel expenses once the worker has completed 50% of the work contract period originally offered.

Letter from DOL to Stan Eury, page 3, January 31, 2002.

Additionally, when the Supreme Court was faced with two overlapping statutes-one being the FLSA, the Supreme Court stated the following:

> Despite evidence that the two statutes define overlapping areas, respondents contend that they should be construed as being mutually exclusive. There has been no presentation of instances, however, where compliance with one Act makes it impossible to comply with the other. There has been no demonstration of the impossibility of determining, in each instance, the respective wage requirements under each Act and then applying the higher requirement as satisfying both.

*Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 519, 70 S.Ct. 755, 94 L.Ed. 1017 (1950).

Here, the situation is the same. There is no indication that it is impossible to comply with both laws. The H2A regulations allow defendants to wait until the 50% mark in the contract period before being obligated to reimburse workers; however, there is no requirement that they must wait until that time to reimburse.

Additionally, there is no requirement under the FLSA that defendants reimburse the full transportation and visa costs during the first workweek. To comply with the FLSA, defendants need only reimburse such costs to the extent needed to bring plaintiff's wages up to the minimum under the FLSA. Therefore, defendant's argument is without merit.

**Policy Arguments**

Defendants' memoranda before this court are replete with policy arguments. However, this court is not authorized to decide what should be the law, rather only to interpret the law as Congress has written it. Defendants should address any displeasure with the law to Congress, the branch of government vested with the authority to make law. This court, however, will do only what its power and authority demand it must do-apply the law as written to the facts of the case before it.

Defendants also argue that any change in the law should come not through this litigation, but rather through notice and comment rulemaking by the agency. This court is not changing the law. This court is only, as noted above, applying the law as it currently stands to the facts of the matter before it.

**Willfulness, Good Faith and Liquidated Damages**

There remain before the court several issues: (1) whether defendants' violation of the FLSA was willful as defined by 29 U.S.C. § 255; (2) whether defendants are entitled to any good faith defenses under 29 U.S.C. § 259 and § 260; and, (3) whether plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b). However, the court finds that these issues will be better decided upon a separate set of memoranda filed by the parties.

Therefore, plaintiffs may file a memorandum regarding willfulness within 30 days of this order, and defendants shall have 20 days from the date of service to respond to the memorandum. Likewise, defendants shall have 30 days to file a memorandum regarding any good faith defenses and any defense to liquidated damages, and plaintiffs shall have 20 days from the date of service to respond to the memorandum. No other memoranda shall be considered. Briefing on issues that have already been decided by this court in this or any other order shall not be addressed in these memoranda and will not be considered.

## *MOTION TO STRIKE*

Also before the court is plaintiffs' motion to strike affidavits of Stan Eury and James Holt served on January 15, 2004, and to exclude any trial testimony from James Holt. Plaintiffs specifically seek to strike paragraphs 4–8 of the Eury affidavits and paragraphs 5–13 of the Holt affidavit along with excluding any testimony by Holt regarding his correspondence or meetings with Alfred Perry.

The affidavits and letter at issue in plaintiffs' motion were submitted to rebut plaintiffs' contentions re: Eury and Holt's states of mind. Defendants admit that they do not rely on the April 6 meeting of the April 26 letter at issue, or any related communication from counsel as basis for good faith defenses, rather they are using this evidence as rebuttal evidence only. However, as these documents relate only to the defenses which are not being decided until further briefing has been completed, this motion to strike is better decided when the good faith defense issues are decided. Therefore, the motion to strike is held in abeyance pending completion of the court ordered briefing on willfulness, good faith, and liquidated damages.

## *CONCLUSION*

For the foregoing reasons, the court hereby orders the following:

1. Plaintiff's motion for certification of collective action under 18 U.S.C. § 216(b) and to send court-approved notice to putative members of the collective action is GRANTED; [DE # 4 and # 45]

 a. All parties shall have ten (10) days from the date of the filing of this order to file suggested changes to this court's proposed notice, attached hereto as exhibit "A";

 b. After the final notice is approved by this court, a copy of the notice, and an accurate Spanish translation of the notice, shall be mailed to each possible plaintiff;

 c. The parties shall inform the court within ten (10) days from the date of filing of this order of their agreement, if any, as to whether the defendants shall disclose the names and addresses of all potential plaintiffs to plaintiffs' counsel in order that plaintiffs' counsel may mail notices or the defendants shall provide the names and addresses to a designated 3rd party for mailing and defendant NCGA shall pay all costs associated with this method of notice. If the parties fail to agree, the court will decide this matter;

2. Plaintiffs' claims under the NCWHA and the common law of contracts are hereby DISMISSED for lack of jurisdiction;

3. The following motions are deemed moot inasmuch as this court has declined to exercise jurisdiction over plaintiff's state law claims:

 a. motion for bilateral certification of North Carolina Wage and Hour Act and contract claims for non-payment of wages when due [DE # 2], and

 b. motion to send court-approved notice to putative members of defendant class pursuant to Rule 23(d)(2);

4. The cross motions for summary judgment [DE # 17 and # 55] are granted in part, denied in part, and partially held in abeyance as follows:

 a. As to transportation costs, plaintiffs' motion for summary judgment is granted and defendants' motion is denied.

 b. As to visa costs, plaintiffs' motion for summary judgment is granted and defendants' motion is denied.

 c. As to subsistence costs, defendants' motion for summary judgment is granted and plaintiffs' motion is denied.

 d. As to willful violations, good faith defenses, and liquidated damages, the cross motions for summary judgment are held in abeyance pending briefing by the parties on the following schedule: Plaintiffs may file a memorandum regarding willfulness within 30 days of this order, and defendants shall have 20 days from the date of service to respond to the memorandum. Likewise, defendants shall have 30 days to file a memorandum regarding any good faith defenses and any defense to liquidated damages, and plaintiffs shall have 20 days from the date of service to respond to the memorandum. No other memoranda shall be considered. Briefing on issues that have already been decided by this court in this or any other order shall not be addressed in these memoranda and will not be considered.

5. Plaintiffs' motion to strike [DE # 65] is held in abeyance pending briefing on the remaining summary judgment issues.

Inasmuch as there still remain issues before the court in the cross motions for summary judgment, the clerk shall not enter judgment at this time.

### APPENDIX A
### PROPOSED NOTICE

#### NOTICE

TO: All current and former employees of the North Carolina Growers Association, Inc. ("NCGA") or Marcus Thigpen who were employed by the NCGA or Marcus Thigpen to perform any agricultural labor under the H2A program in North Carolina at any time in 2000, 2001, or 2002.

FROM: Carol Brooke and Robert Willis, Attorneys

RE: A lawsuit filed against the NCGA and Marcus Thigpen to recover for transportation, visa, or border crossing expenses paid by any H2A worker to the extent that any such payment in 2000, 2001, or 2002 resulted in an hourly wage rate of less than $5.15/hour for each hour worked by that H2A worker in that worker's first workweek for the NCGA or Marcus Thigpen in 2000, 2001, or 2002, and your right to participate in the lawsuit.

DATE: (Date)

The purpose of this Notice is to inform you of the existence of a class action law suit in which you may be a member of the plaintiff class, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit if you so desire.

A group of current and former H2A employees of the North Carolina Growers Association, Inc. ("NCGA") and/or Marcus Thigpen have filed a lawsuit in the United States District Court for the Eastern District of North Carolina against the NCGA and Mr. Thigpen. The name and case

### APPENDIX A
### PROPOSED NOTICE

number of the lawsuit is *Felipe DeJesus De Luna–Guerrero, et al. (Plaintiffs) v. The North Carolina Growers Association, Inc., et al. (Defendants).* 4:02–CV–173–H(4).

The plaintiffs claim that during their employment by the NCGA or Marcus Thigpen, or both, they were not paid the minimum wage rate of $5.15/hour for each hour worked in the first workweek employed by the NCGA and/or Marcus Thigpen because neither the NCGA nor Marcus Thigpen reimbursed the plaintiffs for the money they paid for the transportation and visa fees and border crossing expenses to allow them to work in North Carolina under the H2A program in 2000 and 2001. They are suing to recover unpaid wages, attorney's fees, costs and liquidated damages from the NCGA and Marcus Thigpen under the Fair Labor Standards Act, the North Carolina Wage and Hour Act, and the common law of contracts.

The plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Specifically, plaintiffs seek to sue on behalf of those who were (or are currently) employed under the H2A program at any time on or after the date falling three (3) years immediately preceding the date on which this action was filed. If you fit this description, you may join this suit if you cause to be filed a "Consent to Sue" form very soon.

You can obtain Consent to Sue forms and information regarding the specific filing deadline from the following attorneys who represent the plaintiffs:

**Carol Brooke**
**North Carolina Justice and Community Development Center**
**PO Box 28068**

*APPENDIX A*
*PROPOSED NOTICE*

Raleigh, NC 27611

(919) 856–2144

You may contact any of plaintiffs' attorneys at 1–888–415–1389. If you choose to join this suit, your interest will be represented by the plaintiffs through their attorneys listed above, as counsel for the class.

Your eligibility to file a Consent to Sue form is not affected by any statute of limitations. However, even if you file a Consent to Sue form, your continued right to participate in this suit may depend upon a later decision by the district court that no statute of limitations has run against you. In addition, your continued right to participate may depend upon a later decision that you and the plaintiffs are similarly situated, in accordance with federal law.

If you choose not to join this suit, you will not be affected by the judgment, favorable or unfavorable. If you choose not to join this suit, you are free to file your own law suit. Likewise, if you choose to join this suit, you will be bound by the judgment of the court on all issues in this case whether favorable or unfavorable to you. If you choose to join this suit, you may be required to provide information, sit for depositions, and testify in court while the suit is proceeding.

This notice is only for the purpose of determining the identity of those persons who would like to be involved in this case and has no other purpose. There is no guarantee that the court will rule in favor of the plaintiffs.