J. Guadalupe RESENDIZ–RAMIREZ, et al. Plaintiffs

v.

P & H FORESTRY, LLC, et al. Defendants.

No. 07–CV–1028.

United States District Court, W.D. Arkansas, El Dorado Division.

Sept. 27, 2007.

Caitlin Berberich, Southern Migrant Legal Services, Nashville, TN, Melody Fowler–Green, Southern Migrant Legal Services, Douglas L. Stevick, Southern Migrant Legal Services, Nashville, TN, for Plaintiffs.

F. Mattison Thomas, Compton, Prewett, Thomas & Hickey, P.A., El Dorado, AR, for Defendants.

### MEMORANDUM OPINION
### and ORDER

HARRY F. BARNES, District Judge.

Before the Court is Plaintiffs' Motion for Expedited Court–Authorized Notice to Similarly Situated Workers. (Doc. 11–1).. Defendants have responded. (Doc. 14). The Court finds the matter ripe for consideration.

## I. BACKGROUND

This lawsuit was filed by six Mexican workers who entered the United States in 2005 with H–2A guest-worker visas to harvest peppers for P & H Forestry, LLC, in or near Hermitage, Arkansas. These H–2A workers are pursuing this action against their employers, P & H Forestry, LLC, John Harrod, Brent Harrod,[1] and Andre Blanchard,[2] for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., Arkansas contract

---

1. Brent Harrod is President of P & H Forestry, LLC, and has been applying for and using the H–2A program on behalf of his family's various farm operations since 1998.

2. Andre Blanchard is a grower residing in St. Martinville, Louisiana, who contracted with Brent Harrod to have workers plant sugarcane in Blanchard's Louisiana fields.

law, Arkansas statutory law, and H–2A regulations. The H–2A workers claim that Defendants, as a matter of policy and practice, did not reimburse them for any expenses incurred leading up to the workers' arrival at Defendants' farm in the United States.[3] The H–2A workers contend that these expenses were primarily for Defendants' benefit and, as a result, must be considered *de facto* wage deductions in determining compliance with the FLSA minimum wage requirements. The H–2A workers allege that the incurrence of these expenses drove their wages below the federal minimum wage of $5.15 during the first week of work. Additionally, the H–2A workers claim that P & H Forestry, John Harrod, and Brent Harrod did not pay them the federal minimum wage when the workers were paid to pick peppers on a piece rate per bucket. Finally, the H–2A workers claim that P & H Forestry did not pay them overtime for work that exceeded forty hours during weeks when they picked up trash along Arkansas highways to fulfill contracts between P & H Forestry and the Arkansas State Highway and Transportation Department.

The H–2A workers are suing on behalf of themselves and all Mexican H–2A workers who entered the United States with H–2A visas to perform agricultural work for P & H Forestry at any time during the three years immediately preceding this order. Thus, in the instant motion, the H–2A workers request that the Court allow expedited court-authorized notice of their FLSA claims to similarly situated workers pursuant to 29 U.S.C. § 216(b). They also request that the Court order Defendants to produce the name and contact information for all similarly situated workers.

## II. DISCUSSION

Plaintiffs ask the Court to conditionally certify an opt-in class under 29 U.S.C. § 216(b) for all similarly situated individuals. The Court will now address this request.

### A. Collective Action Certification Under the FLSA

Section 216(b) of the FLSA provides that any one or more employees may maintain an action to recover the liability prescribed in the section against any employer on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).[4] Unlike Federal Rule of Civil Procedure 23, a collective action maintained under the FLSA is pursued as an opt-in class. *Compare* 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.") *with* Fed.R.Civ.P. 23(c) (requiring that the notice to class members include a statement "that the court will exclude from the class any member who requests exclusion . . .").

---

**3.** These costs include the cost of visa processing, the cost of the H–2A visa, recruitment fees, and travel expenses from the workers' hometowns to work sites in the United States.

**4.** *Hoffmann–La Roche* involved the Age Discrimination in Employment Act (ADEA). However, the ADEA incorporates section 216(b) of the FLSA in its enforcement scheme. *See* 29 U.S.C. § 626(b). Thus, courts have applied the holdings and analysis in ADEA collective action cases to FLSA collective action cases. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir.1975).

■■ The district courts have discretion, in appropriate cases, to facilitate notice to potential members of the class on whose behalf the collective action has been brought. *Id.* at 169, 110 S.Ct. at 486. Once the FLSA action has been filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. *Id.* at 170–71, 110 S.Ct. at 486.

■■ The prevailing approach among federal courts for determining what "similarly situated" means in a collective action context under section 216(b) is the two-stage certification process described in *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir.1995). *See e.g., Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006) (applying two-stage approach as that "typically used by the courts" in cases filed under 29. U.S.C. § 216(b)); *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001); *Grayson v. K Mart Corp.,* 79 F.3d 1086 (11th Cir.1996); *Allen v. McWane, Inc.,* 2006 WL 3246531, *2 (E.D.Tex.2006) (applying the two-stage approach as the "prevailing test among federal courts" in cases filed under 29 U.S.C. § 216(b)). Under this approach, certification for collective action is divided into two stages: (1) the notice stage and (2) the opt-in or merits stage. *Mooney,* at 1213–1214. During the notice stage, the court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice should be given to potential class members. *Id.* at 1213. If the court allows for notification, the court typically creates conditional certification of a representative class and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.

At the second stage of the two-stage process, the court determines whether the class should be maintained through trial. Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. *Id.* If the court decides to decertify the class, the opt-in class members are dismissed from the suit without prejudice and the case proceeds only for the class representatives in their individual capacities. *Id.*

Here, the Plaintiffs move for the court to conditionally certify their class under the two-stage approach, while the defendants argue that the Rule 23 approach [5] is more appropriate. The Eight Circuit has not yet declared which approach it favors in deciding whether plaintiffs are similarly situated under 29 U.S.C. § 216(b), but the district courts in this circuit use the two-stage analysis. *Schleipfer v. Mitek Corp.,* 2007 WL 2485007 (E.D.Mo.2007) (citing *Parker v. Rowland Express, Inc.,* 492 F.Supp.2d 1159 (D.Minn.2007); *Davis v. NovaStar Mortgage, Inc.,* 408 F.Supp.2d 811 (W.D.Mo.2005); *Dietrich v. Liberty Square L.L.C.,* 230 F.R.D. 574 (N.D.Iowa 2005); *McQuay v. American Int'l Group, Inc.,* 2002 WL 31475212 (E.D.Ark.2002)). Moreover, other circuits have held that the standard for certification of a collective action under section 216(b) is considerably less stringent than the standards for certification of a class action under Federal Rule of Civil Procedure 23. *See Grayson,* 79 F.3d at 1096, 1106 (11th Cir.1996); *see also Thiessen,* 267 F.3d at 1105 (10th Cir.2001)(stating that Congress clearly chose not to have the Rule 23 standards apply to class actions under the ADEA [or FLSA] and instead adopted the "similarly situated" standard and to incorporate the

---

**5.** To certify a class under Rule 23 the plaintiff must establish numerosity, commonality, typi-

cality, and representativeness. *See* Fed. R.Civ.P. 23(a).

requirements of Rule 23 would ignore Congress's directive). The Court is convinced that the more prudent approach is to use the two-stage certification analysis that is used by a majority of courts, including a majority of district courts in the Eighth Circuit.

### B. Similarly Situated

■■■ The question before the Court in the present case is whether, under the lenient standard of the notice stage, the named Plaintiffs, through their pleadings and affidavits, have demonstrated that they are "similarly situated" to the potential collective action members. See 29 U.S.C. § 216(b). Although the FLSA does not define the term "similarly situated," it typically requires a showing that the plaintiffs and potential class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. See Thiessen, 267 F.3d at 1106–08; Kautsch v. Premier Communications, 504 F.Supp.2d 685 (W.D.Mo.2007). Further, the "similarly situated" determination requires only a modest factual showing; it does not require the plaintiff and the potential class members to show that they are identically situated. See Kautsch at 689–90.

Here, Plaintiffs assert that the class members would be similarly situated in that "they were all H–2A workers recruited in Mexico and were subject to Defendants' policy or practice of neither paying for nor reimbursing the various visa, visa processing, recruitment, and travel expenses associated with accepting H–2A employment with P & H Forestry, LLC." Plaintiffs further assert that the central legal question presented by the FLSA action is common to each of the class members——whether the expenses were "primarily for the benefit and convenience" of the employer or the employee.

In addition to being similarly subject to Defendants uniform practices regarding the payment of wages, Plaintiffs point out that they are similarly situated to the potential class members in that they all had similar job duties. Plaintiffs and potential class members were all recruited from Mexico to harvest peppers at P & H Forestry's farm in Arkansas. Plaintiffs and the potential class members all worked picking peppers by hand and shared the same piece-rate compensation scheme. Plaintiffs' affidavits allege that other H–2A workers were affected by the same alleged policies and practices of which Plaintiffs complain. In sum, Plaintiffs assert that both their legal issues and factual settings are similarly situated to those of the potential class members.

Defendants dispute that Plaintiffs are similarly situated and argue that even the six named Plaintiffs are not factually similar. Defendants assert four of the six named Plaintiffs did not finish working at least fifty percent of their contract term, which would have entitled them to travel reimbursement. Defendants further assert that two named Plaintiffs failed to work three-fourths of the promised contract hours despite the fact that work was offered to them seven days a week during harvest hours. Defendants argue that a disparity in factual circumstances relative to each Plaintiff, as evidenced by the factual differences in even the named Plaintiffs, will likely cause them to assert different defenses against certain individual Plaintiffs.

The Defendants have pointed to some factual differences between the Plaintiffs. However, potential class members need not be identically situated. Kautsch, at 689–90. Here, the H–2A workers perform the same job of picking peppers for the same employer earning the same piece rates. All the H–2A workers were recruit-

ed from Mexico and incurred similar employment-related expenses. Considering the lenient notice standard at this early stage of litigation, the Court is satisfied that Plaintiffs have met their burden to show that conditional certification is proper. The Plaintiffs have demonstrated that there is a group of similarly situated employees who are victims of P & H Forestry's alleged, single decision, policy, or plan to deny Plaintiffs payments or reimbursements for various expenses associated with accepting H–2A employment, which resulted in the workers earning less than minimum wage.[6] Accordingly, the Court will conditionally certify Plaintiffs' FLSA collective action claims. If, after the close of discovery, Defendants believe that they can persuade the Court that the potential class members are not similarly situated, Defendants should file a motion for decertification. Then, the Court will reevaluate whether plaintiffs are similarly situated for the purpose of this collective action.

## C. Sub–Classes

 Plaintiffs suggest that the general class of similarly situated H–2A workers can further be divided into two subclasses of workers who suffered distinct FLSA damages. One class includes Plaintiffs and similarly situated workers who performed work in the Arkansas Defendants' pepper fields. These workers were subject to the alleged Arkansas Defendants' policy or practice of paying workers for picking peppers at a piece rate rather then the hourly wage specified in the H–2A application. Plaintiffs allege that the piece rate, which in 2005 was $.75 per bucket for larger peppers and $1.50 per bucket for jalapeno peppers, consistently resulted in workers earning far below the federal minimum wage.[7]

The other sub-class that Plaintiffs propose includes those named Plaintiffs and similarly situated workers who picked up trash along Arkansas highways in fulfillment of contracts that P & H Forestry had with the Arkansas State Highway and Transportation Department. Many H–2A workers completed seventeen days of trash work, and allegedly were not paid overtime for this work. The Court agrees with Plaintiff's proposed subclasses and believes the creation of these two subclasses will aid in the management of this case.

## D. Statute of Limitations

Defendants argue that, because their acts were not willful, the statute of limitations for the claims in this case should be two years. Pursuant to 29 U.S.C. § 255(a), FLSA claims generally have a two year statute of limitations. The lone exception to the two-year limitations is where there has been a willful violation by an employer, in which case there is a three-year statute of limitations. 29 U.S.C. § 255(a). Whether Defendants' violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. See Villatoro v. Kim Son Restaurant, L.P., 286 F.Supp.2d 807, 811 (S.D.Tex.2003). The facts concerning will-

---

6. The Court is mindful that other courts confronted with FLSA claims identical to this one have conditionally certified them as collective actions. See e.g., Recinos–Recinos v. Express Forestry, 233 F.R.D. 472, 475–77 (E.D.La. 2006); De Luna–Guerrero v. North Carolina Grower's Ass'n, 338 F.Supp.2d 649, 653–55, 665 (E.D.N.C.2004)

7. Plaintiffs give the example of one worker who earned only $154.50 for 103 buckets of peppers he picked in his first full week of work. In order to have made the federal minimum wage of $5.15 per hour, he must have worked thirty or fewer hours for the entire week. However, the worker claims that he worked far more than thirty hours that week

fulness must be elicited during discovery, and Defendants may challenge the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Defendants during the three-year period immediately preceding this ruling.[8] If it is later determined that Defendants' violations were not willful, then the claims of similarly situated workers falling outside the two-year statute of limitations will be time-barred. Accordingly, the notice shall explain clearly that claims of employees who have not worked for Defendants within the past two years may be time-barred and, if so, no recovery will be available.

### E. Plaintiffs' Miscellaneous Requests

Plaintiffs ask that Defendants be ordered to provide Plaintiffs with all names, last-known addresses, telephone numbers, social security or passport numbers, and dates of birth of the potential opt-in plaintiffs to assist in issuing notice. Plaintiffs assert that this information is critical given the migratory lifestyle of similarly situated workers and is necessary to ensure positive identification. Defendants have not objected to providing this information. Thus, Defendants are ordered to provide Plaintiffs the requested information in a usable format on or before October 15, 2007.

Plaintiffs also ask that they be given at least six months to locate and file consent forms for opt-in plaintiffs. Because the vast majority of potential opt-in plaintiffs are migrant workers who are away from home for long periods of time, Plaintiffs content that this six-month period is reasonable and necessary. The Court agrees with Plaintiffs. Thus, Plaintiffs have 180 days from the date of the order authorizing notice to locate and file consent forms for opt-in plaintiffs.

### F. Plaintiffs' Proposed Notice

Plaintiffs have submitted a proposed notice to be sent to potential opt-in plaintiffs.[9] The Court would like to give Defendants the opportunity to state any objections it may have to Plaintiffs' proposed notice. Defendants will have until October 10, 2007, to submit to the Court any objections to Plaintiffs' proposed notice. After review, the Court will then issue a separate order authorizing the notice and consent form.

### III. CONCLUSION

Based on the reasons presented above, Plaintiffs' Motion for Expedited Court–Authorized Notice to Similarly Situated Workers is **GRANTED IN PART**. The Court conditionally certifies the following class: All workers from Mexico who entered the United States with H–2A visas to work for P & H Forestry, LLC and who performed agricultural work in Arkansas or Louisiana at any time from September 27, 2004, to present. Defendants are **ORDERED** to provide Plaintiffs with all names, last-known addresses, telephone numbers, social security or passport num-

---

**8.** Plaintiffs' proposed class includes all individuals who were employed by Defendants at any time from June 2004 to present. However, the statute of limitations on an opt-in plaintiff's claim is not tolled until he or she files a consent form with the court. 29 U.S.C. § 256(b). Therefore, notice should issue to all individuals who were employed by Defendants at any time during the three years preceding the date of this order.

**9.** The Court notes that Plaintiffs' proposed notice does not include a statement explaining clearly that claims of employees who have not worked for Defendants within the past two years may be time-barred and, if so, no recovery will be available. Therefore, Plaintiffs should promptly submit an amended proposed notice to the Court that contains such a statement.

bers, and dates of birth of potential opt-in plaintiffs as requested by October 15, 2007. Defendants are further **ORDERED** to state any objections to Plaintiffs' proposed notice by October 10, 2007. The Court will issue a separate order authorizing notice. Then, Plaintiff will have 180 days to file all consent forms of opt-in plaintiffs.